UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LINDA K. HALL,

                Plaintiff,

                              AMENDED
                         DECISION AND ORDER
     v.                       08-CV-00024-A

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

---

## **INTRODUCTION**

Plaintiff Linda Hall brings this action pursuant to 42 U.S.C. § 405(g), claiming that the defendant, Michael Astrue, the Commissioner of Social Security (the "Commissioner"), improperly denied her application for disability benefits under the Social Security Act. The plaintiff claims to be disabled as a result of left knee osteomyelitis, left knee swelling/arthritis, right shoulder problems/tendonitis, asthma/emphysema, mitral valve regurgitation, heart problems/palpitations, Hepatitis, anxiety, and depression. (R. 22). The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), on grounds that the Administrative Law Judge's (ALJ's) decision was supported by substantial evidence in the record and is based upon the application of the correct legal standards. Plaintiff also cross-moves for judgment on the pleadings, alleging that

the Commissioner's determination is erroneous and that she was and continues to be disabled. For the reasons stated herein, the Court grants judgment on the pleadings for the plaintiff and finds that the matter must be remanded for calculation of benefits because the Commissioner's decision denying the plaintiff Social Security Income benefits ("SSI") was not supported by substantial evidence. Furthermore, a rehearing is unnecessary because there is substantial evidence on the record that the plaintiff is disabled as of September 29, 2003.

## **BACKGROUND**

On February 13, 2001, plaintiff Linda Hall, applied for SSI. (R. 21).[1] Her claim was denied on March 28, 2001, and denied again on reconsideration on May 15, 2001. (R. 109, 115). A hearing was held before Administrative Law Judge ("ALJ") Eric Glazer on October 16, 2002. (R. 860-79). ALJ Glazer found the plaintiff not disabled on November 27, 2002, and the plaintiff did not appeal the decision. (R. 40-51). Instead, the plaintiff filed a new SSI application on April 4, 2003, which was denied on September 19, 2003. (R. 59, 122). The plaintiff then requested an administrative hearing on October 17, 2003. (R. 63).

A hearing was held before ALJ William Pietz on September 20, 2005. (R. 880-909). On October 17, 2005, ALJ Pietz found the plaintiff not

---

[1] "R." refers to the administrative record filed by the Commissioner as part of his answer.

2

disabled at any time since November 28, 2002, amending her alleged onset date to the day after ALJ Glazer's decision on the basis of *res judicata*.[2] (R. 18-30). The plaintiff requested review of the ALJ's decision by the Appeals Council on December 17, 2002 (R. 54), and subsequently retained counsel who submitted comments in support of her claim on October 3, 2006 (R. 925-31), as well as over two hundred additional pages of medical evidence, including new and material evidence. (R. 596-910, 914-24). The Appeals Council denied the request for review on November 27, 2007. (R. 10-15).

The plaintiff then commenced this action on January 11, 2008. The Commissioner filed a motion for judgment on the pleadings on August 19, 2008, and the plaintiff cross-moved for judgment on the pleadings on September 18, 2008.

The plaintiff was born on November 28, 1958, and was therefore forty-six years old as of the date of ALJ Pietz's decision. She completed some of her high school education, but failed classes in tenth and eleventh grade, and never graduated. (R. 864). Although she has performed some work in the past fifteen years as a dishwasher and home health aide, the ALJ conceded that none

---

[2] Plaintiff had previously filed an application for SSI on February 13, 2001, alleging disability since 1998. (R. 134-37). This application was denied, and plaintiff appealed the denial to ALJ Glazer, who issued a decision on November 27, 2002, finding that the plaintiff was not disabled through the date of the decision. (R. 40-48). Since the period from July 27, 2001 through November 27, 2002 had already been adjudicated by ALJ Glazer, ALJ Pietz applied res judicata and considered only the period after November 27, 2002 in his decision. (R. 21-22).

3

of it was performed as substantial gainful activity, and therefore she had no past relevant work. (R. 28).

**DISCUSSION**

This Court has jurisdiction under 42 U.S.C. § 405(g) to hear claims based on the denial of Social Security benefits. This Court may set aside the Commissioner's decision only if it is based upon legal error or his factual findings are not supported by substantial evidence. See 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d. Cir. 2008) (internal quotation marks omitted); Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

In order to establish disability under the Act, the plaintiff has the burden of demonstrating (1) that she was unable to engage in substantial gainful activity by reason of a physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. See 42 U.S.C. § 1382c(a)(3); see also Barnhart v. Walton, 535 U.S. 212, 215 (2002). Moreover, eligibility for SSI based upon disability is conditioned upon compliance with the

4

income and resource requirements of 42 U.S.C. §§ 1382a and 1382b.

The Commissioner has established a five-step sequential evaluation for the adjudication of disability claims:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a severe impairment that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work.

See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); 20 C.F.R. § 416.920. The burden is on the claimant at the first four steps of the evaluation. Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986). If the claimant establishes that she is not capable of performing her past relevant work, then the burden shifts to the Commissioner who must then determine whether the claimant is capable of performing other work which exists in significant numbers in the national economy. Id.

The ALJ applied the five-step analysis in reaching his disability determination. 20 C.F.R. § 416.920. At the first step, the ALJ found that the plaintiff had not engaged in substantial gainful activity since November 28, 2002 - her alleged onset of disability. (R. 23). At the second step, the ALJ found that

5

the plaintiff's left knee impairment, obesity, chronic obstructive pulmonary disease, heart condition, and generalized anxiety disorder were severe impairments. (R. 24). The ALJ found that the plaintiff's past history of drug and alcohol dependence, hepatitis B and C, hiatal hernia, right should tendonitis, and diabetes were not severe impairments. (R. 23-24). Therefore, the ALJ proceeded to step three of the sequential evaluation, and considered whether plaintiff had an impairment, or combination of impairments, severe enough to meet or equal the criteria of one of any listed impairments that the Commissioner presumes are so severe as to preclude substantial gainful activity. See 20 C.F.R. § 416.920(d),(e). The ALJ found that the plaintiff's severe impairments did not meet or equal the criteria contained under the Listing of Impairments (Listings) of 20 C.F.R. Part 404, Appendix 1, Subpart P. (R. 25).

Next, the ALJ considered the plaintiff's residual functional capacity (RFC) and determined that she could do less than the full range of sedentary work. See 20 C.F.R. § 416.920(f). The ALJ determined that the plaintiff could not do squatting, kneeling, climbing, more than incidental stair use, and was restricted to following simple instructions. (R. 28). At step four, the ALJ concluded that the plaintiff had no past relevant work. Id.

At step five, the ALJ considered the plaintiff's RFC, age, and education, and, relying on the testimony of the impartial vocational expert (VE) Timothy Janikowski, determined that a finding of "not disabled" was directed by

Medical-Vocational Rules 201.18 and 201.24 of Appendix 2, Subpart P, Regulations No.4. (28-29). In particular, the ALJ determined that the plaintiff could perform sedentary, unskilled work as a surveillance system monitor, dowel inspector, and final assembly worker. Id. The ALJ concluded that because the plaintiff could perform work that exists in significant numbers in the national economy, she failed to meet the standard for being deemed disabled under the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); see 20 C.F.R. § 416.920(e).

I. **Plaintiff is Per Se Disabled under Medical Listing 1.02A: Major Dysfunction of a Joint (Knee)**

The plaintiff first challenges the ALJ's determination that she is not per se disabled under Medical Listing 1.02A. At step three in the disability process, the ALJ is required to evaluate the plaintiff under the Medical Listings contained in Appendix 1 to Subpart P of Part 404 - the Listing of Impairments. The ALJ found that the plaintiff's left knee osteomyelitis and arthritis with obesity did not meet or equal Medical Listing 1.02. Listing 1.02A is classified as:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability), and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected

7

> joints. With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively as defined in 1.00B2b.

Section 1.00B2b states that:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or work. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single handrail . . .

20. C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b).

In finding that the plaintiff's left knee osteomyelitis and arthritis with obesity did not meet or equal Medical Listing 1.02, the ALJ held that although the plaintiff "exhibited an infection in the left knee, . . . this osteomyeltis infection resolved with care and treatment on March 26, 2004 in accordance with the report of a treating source, Dr. Schwach." (R. 24). The plaintiff's knee infection did resolve for a time, but her residual knee impairment persisted. The report from Dr. Schwach that the ALJ cites specifies that although the left knee osteomyelitis resolved, "there are some ongoing permanent joint symptoms," "there will be permanent impairment in the left knee," and "she is ambulating with a walker and putting partially [sic] weight on it." (R. 469).

The plaintiff has to use a walker for most ambulation because of her severe left knee impairment, caused by osteomyelitis and septic arthritis. (R.

8

466). She has documented deformity of the knee (R. 383, 441), accompanied by pain (R. 334, 370, 380-387, 400, 474, 553, 604, 714, 771, 781, 835, 838, 852), stiffness (R. 370, 468), and a limited range of motion (R. 370, 467, 469, 604, 714, 770, 781, 835). She therefore fulfills all of the requirements of 1.02: deformity of a knee, with pain, stiffness, and a limitation of motion, caused by aseptic arthritis with X-ray documentation of bony deterioration (erosion with lucent and sclerotic changes throughout the knee). (R. 466).

The second requirement under Medical Listing 1.02A, an inability to ambulate effectively as defined in 1.00B2b, is also proven conclusively. The plaintiff's left knee osteomyelitis involved a weight-bearing joint (the knee), and she was unable to ambulate effectively, as demonstrated by her reliance upon a walker after her knee infection (R. 371, 381, 383, 386, 387, 436, 440, 469, 604, 834), and a repeatedly noted abnormal gait even when using a walker. (R. 371, 838, 852). The ALJ noted in his decision that the plaintiff used a walker because of her left knee pathology, and did not contend that it is not medically necessary. (R. 27). There is no evidence to refute Dr. Schwach's finding that the plaintiff is permanently disabled and could not walk more than 30 feet. (R. 714). At the hearing, the plaintiff testified that she could not even walk half a block. (R. 895).

The Commissioner contends that there is no evidence that the plaintiff's serious knee deformity persisted for a continuous period of twelve months. See Barnhart v. Walton, 535 U.S. 212, 218-222 (2002). While the

plaintiff's condition did improve at times, each time was followed by an increase in knee problems. The plaintiff initially injured her knee on September 29, 2003, was still disabled as of a March 9, 2005 examination, and had a serious knee deformity throughout this period. (R. 370, 383, 400, 441, 467-469, 604, 714, 770, 781, 835). As the plaintiff fulfills the per se requirements of being disabled under Medical Listing 1.02A, and substantial evidence does not support the ALJ's finding, the plaintiff is found to be disabled.

## II. The ALJ Erroneously Failed To Give Controlling Weight to the Opinion of the Plaintiff's Treating Physician

The opinion of the plaintiff's treating orthopedic surgeon, Dr. Schwach, should have been given controlling weight by the ALJ. On November 26, 2003, the plaintiff was admitted to the emergency room at Olean General Hospital for continued pain in her left leg. (R. 334-335). An examination revealed that she was in moderate distress and there was a significant amount of swelling and tenderness along the knee. (R. 334-35). A bone scan performed on December 4, 2003 revealed osteomyelitis involving the femoral condyle and tibial plateau. Id. X-rays of the left knee showed swelling and erosion and joint fluids suggestive of osteomyelitis. Id. An MRI showed patchy infiltrates of edema both in the distal femur and in the proximal tibia. Id. The plaintiff was seen in consultation by Dr. Schwach, who felt that she had septic arthritis, and started her

on Vancomycin.  Id.  Dr. Schwach did an arthroscopy that showed an infection of the left knee joint and arthrofibrosis.  Id.  Because of the severity of the infection, it was felt that the plaintiff would require at least eight weeks of IV antibiotic therapy.  Id.  She was transferred to another facility for this care.  Id.  Her discharge medications were Advair, Xopenex, Atrovent, Paxil, Lovenox, Vioxx, Vancomycin, Cardizem, Duragesic, and Lortab.  Id.  Her final diagnoses were septic arthritis, streptococcus sepsis, hepatitis B and C, depression, history of drug and alcohol use, and chronic obstructive lung disease.  (R. 334).  The plaintiff was subsequently treated at Manor Oak Life Center through January 20, 2004 for the remainder of her antibiotics course.  (R. 352-353).

On February 5, 2004, Dr. Schwach evaluated the plaintiff at a follow-up visit.  (R. 466-467).  His examination revealed minimal swelling of the left knee and a range of motion from 30 to 70 degrees.  Id.  X-rays of the left knee showed erosion of the medial condyle and lateral condyle of the femur as well as erosions of the medial tibial plateau.  Id.  There were also some sclerotic changes on the medial plateau and medial condyle of the femur, which is consistent with osteomyelitis.  Id.   On February 27, 2005, the plaintiff had a follow up with Dr. Schwach.  (R. 468).  She reported that she was hopping on her leg, using a knee brace, and attending therapy.  Id.  On exam, Dr. Schwach found an area of redness over the left knee, limitation of flexion and extension, and marked quadriceps atrophy.  Id.  Dr. Schwach diagnosed marked degree of stiffness in

her knee due to arthrofibrosis from an infection. He discontinued use of the knee immobilizer and advised her to advance to weightbearing as tolerated. Id. On March 26, 2004, Dr. Schwach noted motion limited from 10 to 45 degrees, some instability to stress testing medially and laterally, and some effusion. (R. 469). Dr. Schwach opined that there would be ongoing permanent joint symptoms, including permanent swelling and possible permanent instability. The doctor recommended ambulation with a walker and only putting partial weight on her knee. Id. In a note dated March 26, 2004, Dr. Schwach indicated that the plaintiff had a "permanent impairment of left knee due to osteomyelitis/arthrofibrosis." (R. 84).

On August 9, 2005, the plaintiff returned to Dr. Schwach for a follow-up visit. (R. 714). She reported that the knee did not want to lockup, and she could only walk for 30 feet with crutches. Dr. Schwach opined that although there were no further signs of infection, she had chronic pain and loss of motion, which he expected to be permanent. Dr. Schwach wrote, "I believe she will probably be permanently disabled from work as a result of this condition." (R. 714). On November 10, 2005, the plaintiff reported continued symptoms of pain, which required Lortab and Duragesic. (R. 604). She complained of hyperextension, chronic aching pain, difficulty walking more than 30 feet, and a need to use a walker or cane to get around. Id. On examination, Dr. Schwach noted some shortening of the left leg, a range of motion from 3-90 degrees, and

moderate tenderness over the medial joint line.  Id.  X-rays showed posttraumatic arthritis in the left knee associated with septic arthritis of the knee and "quite a bit of destruction of the joint."  Id.  Dr. Schwach diagnosed her with "arthritis of the left knee, which is severe and disabling in nature," and wrote that, "It would be my impression that Linda is disabled from work, especially any kind of factor [*sic*] work or assembly line work due to the significant problems of her knee."  Id.

An MRI of the left lower extremity dated February 15, 2006 showed significant degenerative changes around the left knee in a manner compatible with prior septic osteoarthritis, and some residual edema.  (R. 736).  A bone scan on the same date showed findings that "could imply" some residual inflammation or possible healing process from the past infection.  (R. 737).  In September 2006, the plaintiff had a total knee replacement done at Buffalo General Hospital.  (R. 834).  It was noted that the plaintiff was attending therapy and ambulated with a walker.  Id.  On December 8, 2006, the plaintiff stated that she was recently treated for local cellulitis, and had pain in the lower leg with certain activities of weight bearing.  (R. 835).  On examination, Dr. Schwach noted areas of tenderness along the lateral margin of the fibula going from midshaft down towards the lateral malleolus and range of motion from 5 to 95 degrees.  Id.  He recommended therapy and prescribed Lortab.  Id.

On March 27, 2007, the plaintiff complained of problems with pain in her thigh and upper leg on the right.  (R. 838).  Dr. Schwach observed that she

13

walked with a limping gait, and his examination revealed pain with rotational maneuvers, slightly restricted on leg abduction and adduction, and left knee flexion and extension from 4 to 110 degrees. Id. Dr. Schwach diagnosed gait abnormality secondary to muscle imbalance in the right lower extension, and possible torn medial meniscus or arthritis in the right knee or right hip. Id. He recommended X-rays of the pelvis, right femur, and knee, and an MRI of the right knee. Id. On April 11, 2007, Dr. Schwach reported that an MRI of the right leg showed minimal chondropathic changes. (R. 847). Examination showed mild palpable tenderness in the quadriceps in the proximal thigh and he again recommended X-rays. Id. On April 26, 2007, the plaintiff complained of pain from her back and hip going down her leg to her calf. (R. 852). Dr. Schwach noted that an MRI of the lumbar spine revealed small bulging discs. Id. In his examination, he noted tenderness in the calf and loss of mobility in the plaintiff's knee. Id. Dr. Schwach felt that the plaintiff's favoring of her hip and knee were probably throwing off her gait and recommended physical therapy. Id.

The Commissioner alleges that Dr. Schwach's statements from August 9, 2005 ("probably be permanently disabled") and November 10, 2005 ("disabled from work") do not state that plaintiff was disabled from all work. (R. 604, 714). These statements alone do not lead to a determination that the plaintiff is disabled, as 20 C.F.R. § 416.927(e)(1) states that, "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we

14

will determine that you are disabled." The plaintiff has not been determined to be disabled because of Dr. Schwach's statements; rather, the plaintiff is disabled because her impairments fit the description of Medical Listing 1.02A. Dr. Schwach's opinion simply reinforces the finding that plaintiff is disabled. Furthermore, as a treating physician, Dr. Schwach's opinion on the issue of the nature and severity of the plaintiff's impairments should be given controlling weight because his opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d. Cir. 2003); 20 C.F.R. § 404.1527(d)(2). Dr. Schwach was not offering an opinion on the ultimate issue of legal disability, but rather on the nature and severity of the plaintiff's impairments. See Green-Younger, 335 F.3d at 106.

As a treating physician, Dr. Schwach's opinion can have and should have controlling weight in the analysis of the plaintiff's disability. This Court has previously held that:

> [A]lthough the ultimate issue of disability is reserved to the Commissioner, relieving the Commissioner of having to credit a treating physician's finding of disability, the administrative decisionmaker is not relieved from the obligation under §§ 404.1527(d)(2) and § 416.927(d)(2) . . . to explain why a treating physician's opinion is not credited.

Montalvo v. Barnhart, 457 F.Supp.2d 150, 168 (W.D.N.Y. 2006)(Elfvin, J.).

As mentioned in the above quotation, § 416.927(d)(2) states that:

15

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2).

The ALJ harshly dismissed the opinion of treating physician Dr. Schwach as unsupported by details, objective findings, and inconsistent with the record as a whole, writing that, "there are no statements by a physician asserting that the claimant can not do any kind of work, *except a mere prescription pad conclusory statement* by Dr. Schwach that the claimant is 'disabled' due to septic arthritis of the left knee and diabetes that was tendered at the hearing." (R. 27) (emphasis added). However, the ALJ has not cited to any objective or clinical findings that contradicted those of Dr. Schwach. There are also numerous diagnostic studies that support Dr. Schwach's opinion, including an MRI which showed patchy infiltrates of edema both in the distal femur and in the proximal tibia (R. 334), X-rays of the left knee which showed swelling and erosion and joint fluids suggestive of osteomyelitis (Id.), X-rays which showed an effusion to the left knee (R. 400), and X-rays of the left knee which showed erosion with lucent

16

and sclerotic changes throughout the knee, more pronounced medially than laterally consistent with osteomyelitis. (R. 466).

The ALJ did not find that Dr. Schwach's opinion was contradicted by any other medical source of record, but instead only erroneously concluded that his opinion was not based on sufficient clinical or diagnostic studies. "Generally, the Commissioner grants the opinion of a treating physician controlling weight only if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record, such as the opinions of other medical experts." Ianni v. Barnhart, 403 F.Supp.2d 239, 255 (W.D.N.Y. 2005); Halloran v. Barnhart, 362 F.3d 28, 31(2d Cir. 2004) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)). An ALJ is required to provide "good reasons" in his decision for the weight he gives a treating source's opinion. See Halloran, 362 F.3d at 32; 20 C.F.R. § 416.927(d)(2). As the ALJ did not provide "good reasons" to counter Dr. Schwach's opinions and findings, Dr. Schwach's opinion is entitled to controlling weight.

Accordingly, as the ALJ erroneously found that the medical opinion of Dr. Schwach was unsupported by the record, Dr. Schwach's opinion as a treating physician will be given controlling weight and the plaintiff is found to be disabled under Medical Listing 1.02A.

17

**CONCLUSION**

This Court finds that the Commissioner's decision denying the plaintiff SSI was not supported by substantial evidence. The record contains substantial evidence of disability such that further evidentiary proceedings would serve no purpose. Therefore, judgement on the pleadings in favor of the plaintiff is granted. This matter is remanded to the Social Security Administration for calculation of benefits commencing September 29, 2003, the date of onset of plaintiff's knee injury.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: October 26, 2009